[Sac. No. 4377. In Bank.—February 25, 1931.]

ALBERT C. GUNTHER, as Administrator, etc., Appellant, v. ERNEST E. THOMPSON et al., Respondents.

J. Oscar Goldstein for Appellant.

Fred C. Pugh for Respondents.

THE COURT.—This appeal is taken by plaintiff, as administrator, from a judgment rendered in favor of defendants in an action praying for the cancellation and rescission of a written contract entered into by said intestate and defendant for the exchange of real and personal properties owned, respectively, by plaintiff's intestate, Lawrence J. Gunther, and defendant Dr. Ernest E. Thompson. The properties involved in the exchange owned by Lawrence J. Gunther in his lifetime consisted of farm lands situate near the city of Red Bluff, county of Tehama; a timber claim situate in the county of Humboldt, and two promissory notes, aggregating in value $8,500. The property owned by Dr. Ernest E. Thompson, which passed in the exchange, was the entire capital stock, to wit: 50,000 shares of the Quality Shop, incorporated, the same being a gents' furnishing store of sixty-four years of business existence, located at 705 Main Street, city of Red Bluff, county of Tehama. Said Lawrence J. Gunther, appellant's intestate, at the time the ex-

change was made was of the age of thirty-two years, and was born and reared on a farm within ten miles of Red Bluff, and was a customer of said Quality Shop in his lifetime and was personally acquainted with the employees of said Quality Shop. Some five days after the transaction and after said Lawrence J. Gunther had taken possession of the shop and its business both personally and with the assistance of a former manager and employee of said shop, he committed suicide. The exchange had been solicited by said deceased and was consummated through the agency of defendant Bruch, a real estate agent, who was found by the trial court to have been the agent of Gunther and not of respondent Thompson. Bruch, at the request of said Gunther, had attempted to negotiate exchanges of his real property on several prior occasions, but each attempt failed, generally because the properties proposed did not appear to said decedent to be good investment propositions. Bruch, on preparing the exchange agreement, used a printed form of contract for the sale of real estate without eliminating much of its inappropriate phraseology. Neither party, it would seem, had the aid of legal assistance. Bruch, who did not know that said Quality Shop was incorporated, merely described the property that was to pass to decedent as ''that certain stock of merchandise and fixtures located at 705 Main street''. Two supplemental escrow agreements were executed by the parties, which show their understanding as to what was actually exchanged and the property that decedent was to receive. Appellant does not press the several other grounds of fraud set forth in the complaint and which were found adversely to his contention by the trial court for the reason that the finding of a trial court as to a matter of fact, in a case where a conflict of evidence exists, will not be disturbed by an appellate court.

After the death of Lawrence J. Gunther his personal representatives gave notice of rescission and tendered back the store and its contents. Respondent refused the offer.

The 50,000 shares of the capital stock of the corporation were owned by said Thompson. One share of the stock had been issued to his son and one share to his nurse. Those two shares were assigned to respondent and he held them in his possession, making him the sole owner and holder of the entire issue. Appellant's grounds for the avoid-

ance of the exchange is bottomed on the ground that the transaction was not one as between individuals, but a corporate transaction on the part of the corporation and inasmuch as there was no meeting of the directors authorizing the sale, or any formal action taken in compliance with section 361a of the Civil Code, which provides that "No sale, lease, assignment, transfer or conveyance of the business of any corporation now existing . . . shall be valid without the consent of stockholders thereof, holding of record at least two-thirds of the issued capital stock of such corporation; . . . " the transaction amounted to a nullity. The provisions of section 361a are for the protection of stockholders and creditors of the corporation, and the stockholders and creditors alone have the right to object to such a transfer. (*Lost Burros Gold Min. Co.* v. *Inyo County Bank,* 83 Cal. App. 679 [257 Pac. 209]; *South Pasadena* v. *Pasadena L. & W. Co.,* 152 Cal. 579 [93 Pac. 490].) ■ It would be a startling proposition to announce as a principle of law or equity jurisprudence that one, with knowledge that he is dealing with a corporation in the purchase of its stock, as in the instant case, may elect to take an assignment of all the capital stock of a corporation, together with every corporate privilege and right that its ownership conveyed, enter into possession of the business and property and thereafter be heard at will to repudiate the transaction on the ground of nonconformity by the corporation with the provisions of said section 361a. The decedent himself could not have repudiated the transaction and it follows that his personal representative may not have greater rights.

The court found that the stock transfer was signed in blank by respondent and delivered to a bank to be held as security for decedent's indebtedness to respondent upon a deferred payment in the sum of $6,500 arising out of the transaction.

■ There is no merit in the contention that decedent did not know that the Quality Shop was a corporation. Respondent testified that he discussed the subject with him and it is incredible that he was not made acquainted with the fact by the papers and books which he examined in his investigation of the business done by the shop. The decedent became the owner of the stock the day he took possession,

May 11, 1928, and he had the right from thenceforward, if he desired to continue the corporate existence of the business, to elect directors and officers of his own choice and do every act which the franchise granted. It is also in evidence that the value of the property which the decedent received in the exchange was some $2,000 or $3,000 greater than the value of the property he parted with. This evidence was given by persons who were experienced and familiar with the Quality Shop and its business, and apparently disinterested in the result of the case. The trial court accepted their appraisement of values as against others who testified on the subject. The findings are quite lengthy. Every finding made by the court, with special emphasis on the one that the decedent knew at all times he was buying 50,000 shares of stock of the corporation, its entire issue, owned solely by respondent, finds ample support in the evidence.

The judgment is therefore affirmed.